UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL ANTHONY GRIMES,<br><br>    Plaintiff,<br><br>    v.<br><br>GERALDINE AYERDIS, et al.,<br><br>    Defendants. | Case No. 16-cv-06870-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 44 |

**INTRODUCTION**

Plaintiff Carl Anthony Grimes sues the City of San Francisco Department of Human Services ("City") and two social workers for alleged constitutional violations arising from his child dependency matter and the removal of his three children from their Brisbane, California home on April 19, 2016. On that date, defendant Geraldine Ayerdis, a social worker for Family and Children's Services in the City and County of San Francisco, conducted a welfare check with a warrant and removed the children. Grimes also sued defendant Danielle Mendoza, a San Francisco social worker who reported child sexual abuse allegations against Grimes during the child dependency proceedings.

The defendants move for summary judgment on all counts. First, they argue that Grimes lacks standing because he has no Fourth Amendment privacy interest in the home and no Fourteenth Amendment liberty interest in his children. Second, they contend that Grimes is barred from re-litigating the issues underlying his claims by the doctrine of collateral estoppel. Finally, they claim that defendants Ayerdis and Mendoza are entitled to qualified immunity and the City cannot be held liable under 42 U.S.C. § 1983. While Grimes has standing to assert his own claims under the Fourteenth Amendment, the rest of defendants' arguments are well taken. For the

reasons explained below, the motion for summary judgment is GRANTED.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

Grimes is the father of three children who were first removed from his care in January 2015 after he was arrested for domestic violence charges against Martinez, the mother of his children.[1] During the child dependency proceedings in juvenile court between January 2015 and April 2016, the San Francisco Human Services Agency alleged that both Grimes and Martinez failed to protect their children from harm and caused them serious emotional damage. Request for Judicial Not. ("RJN") Ex. 1 at *1 (Dkt. No. 43). On January 28, 2015, the San Francisco Superior Court ordered the children detained in foster care. Bers Decl. Ex. C (Dkt. No. 45). Additionally, from January to September 2015, a series of restraining orders were issued against Grimes during the dependency proceedings to protect his children. *See* Bers Decl. E-K.

On December 22, 2015, Martinez was permitted to live with her children again. Ayerdis Decl. ¶ 5 (Dkt. No. 46). She reported to Ayerdis that she was not in contact with Grimes and would call police if he tried to contact her. Ayerdis Decl. ¶¶ 4, 6. The San Francisco Superior Court issued a final judgment and custody order on April 14, 2016, based in part on Ayerdis's recommendation and understanding that Martinez had successfully separated herself from Grimes. *See* Bers Decl. Ex. L. The court granted Martinez custody of the children and denied Grimes custody and visitation rights because he was subject to an active restraining order protecting the children from him. *Id*.

On April 18, 2016, four days after Martinez received custody, Martinez gave Ayerdis permission to enter the home and speak with her children about Grimes. Ayerdis Decl. ¶ 13. Ayerdis discovered signs that Grimes was in contact with the family, and saw Grimes parking near the house when she was leaving. Ayerdis Decl. ¶¶ 13, 14; *see also* RJN Ex. 3 at 2 (restating the facts that occurred on April 18, 2016). She decided to confirm if he entered the home, and drove

---

[1] Defendants' provide undisputed facts from Grimes's past dependency proceedings and lawsuits directly related to the facts in this case. As these are public records, and there is no dispute of the authenticity of these records, I GRANT defendants' request for judicial notice. Fed. R. Evid. 201(b).

2

down the block. Grimes began to follow her. *Id*. ¶ 14. When he eventually stopped following her, Ayerdis returned to find Grimes's car near the house and heard yelling inside. *Id*. ¶¶ 14, 15; RJN Ex. 3 at 2.

Ayerdis then sought a warrant and received it after midnight on April 19, 2016; with police assistance, she conducted a welfare check. *Id*. ¶ 16. She removed the children from the house after finding that Martinez had a scratch on her neck and could not explain why Grimes's van was parked at the home. *Id*. ¶¶ 15-17; RJN Ex. 3 at 3. The children were placed in foster care once again, and another restraining order was issued against Grimes. *See* Bers Decl. Ex. B. One of the children later admitted that Grimes was in the home hiding in a closet during the welfare check. Ayerdis Decl. ¶ 18.

After the children were removed this second time, Mendoza was also assigned as a social worker to the dependency proceeding around April 26, 2016. Mendoza Decl. ¶ 2. She reviewed the case file and became aware of Grimes's previous inappropriate sexual behavior toward his children. *Id*. ¶ 3. In September 2016, Mendoza received evidence from an undisclosed reporting party that before the children were removed in April, Grimes would care for them while Martinez worked and had asked one child to perform inappropriate sexual acts on the others. *Id*. ¶ 6. Grimes was called about the sexual abuse allegations in October 2016 but was never taken into custody or interviewed by social workers about the allegation. *See* Bers Decl. Ex. B at 181:13-182:3.

By November 2016, the court declared the children dependents of the court and ordered Grimes and Martinez to receive family reunification services. Bers Decl. Ex. X. After several months where Grimes failed to participate in reunification services, the court terminated the reunification services and ordered the children to remain dependents of the court. Bers Decl. Ex. CC. On February 27, 2018, the court terminated Grimes and Martinez's parental rights and placed the children into permanent adoption. Bers Decl. Ex. DD. Grimes appealed the termination of his parental rights and filed other lawsuits related to his children. *See generally* RJN at 3-5. The appeal is pending.

## II. PROCEDURAL POSTURE

Grimes filed this lawsuit against defendants on October 26, 2016. Compl. (Dkt. No. 6). All of the claims allegedly arise under the Fourth and Fourteenth Amendments. This case was related to two other lawsuits that were reassigned to me in which Grimes and Martinez separately sued the City of Brisbane and some of its employees arising from the same incident. *See* Related Case Order (Dkt. No. 25). I granted motions to dismiss the City of Brisbane and individual defendants in the related matters. *See Grimes v. The City of Brisbane*, Case No. 17-cv-01026-WHO (Dkt. No. 38); *Martinez v. The City of Brisbane*, Case No. 17-cv-01025-WHO (Dkt. No. 32). In this lawsuit, I also dismissed the City of Brisbane and individual defendants with prejudice after a case management conference on December 12, 2017 in which Grimes and Martinez informed me that they would not proceed further on them. *See* Minute Entry (Dkt. No. 31).

This case proceeded with fact discovery. *Id.* On June 13, 2018, defendants filed the pending motion for summary judgment, an administrative motion to file certain materials under seal,[2] and a request for judicial notice in support of their motion. *See* Dkt. Nos. 43, 44, 48. The motion for summary judgment was fully briefed, and Grimes filed a sur-reply that I have considered.[3]

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

---

[2] There is a "strong presumption in favor of access," but it is not absolute and can be overridden for compelling reasons. *Foltz v. State Farm Mutual Auto. Insurance Company*, 331 F.3d 1122, 1135 (9th Cir. 2003). Defendants have asked to keep specific documents attached to the Declarations of Mendoza, Ayerdis, and Bers under seal because they contain victim information pertaining to the minor children in this case. I find this a compelling reason to override the public presumption in favor of access, and I GRANT the administrative motion to file those materials under seal.

[3] Defendants request that I not consider extraneous exhibits attached to plaintiff's opposition, and that I strike plaintiff's sur-reply. I DENY both requests.

4

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence that a material factual issue remains for trial. *Id.* The nonmoving party may not rest on mere allegations or denials from its pleadings but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party need not show that the issue will be conclusively resolved in its favor. *See Anderson*, 477 U.S. at 248-49. All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to...judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise a genuine dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

**DISCUSSION**

Defendants seek summary judgment on all of Grimes's claims, asserting: (i) a lack of standing; (ii) collateral estoppel; (iii) qualified immunity; and (iv) that the claims fail as a matter of law. The doctrine of collateral estoppel bars Grimes from re-litigating the issues in his complaint, and so I GRANT the motion for summary judgment. But I would also GRANT the motion based on qualified immunity for Ayerdis and Mendoza, and on the lack of municipal liability for the City.

**I.     STANDING**

As an initial matter, defendants assert that Grimes lacks standing. They contend that Grimes lost his parental rights and liberty interest under the Fourteenth Amendment, and lacks any privacy right under the Fourth Amendment. Mot. Summ. J. at 17-18. For the reasons discussed below, Grimes lacks standing on his Fourth Amendment claims and may not assert claims on behalf of his children, but he has standing on his own Fourteenth Amendment claims.

Standing "addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). There are three requirements for standing: (i) "the plaintiff must have suffered an injury in fact;" (ii) "there must be a causal connection between the injury and the conduct complained of;" and (iii) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and modifications omitted). Grimes also "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068-69 (9th Cir. 2011) (internal quotation marks omitted).

The burden to prove that standing exists is on the party seeking to invoke federal jurisdiction. *Lujan*, 504 U.S. at 560-61. Once standing is challenged, including "at the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element." *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, No. 16-15946, 2018 WL 3149770, at *5 (9th Cir. June 28, 2018). This burden stands true even for pro se litigants. *See e.g.*, *Urias v. Obama*, 659 F. App'x 457 (9th Cir. 2016) (affirming lack of standing after pro se plaintiff failed to plead a particularized injury); *Johnson v. Beard*, 679 F. App'x 583 (9th Cir. 2017), *cert. dismissed*, 138 S. Ct. 1998 (2018). Plaintiffs generally do not have standing to bring claims based on the rights of third parties, *Warth v. Seldin*, 422 U.S. 490, 499 (1975); a minor's interests may be pursued by next friend or guardian ad litem only. *Cartano v. Santa Clara Cty.*, No. C-02-1191 PJH, 2002 WL 1677723, at *2 (N.D. Cal. July 19, 2002).

Grimes lacks standing to assert a violation of his children's rights. No later than April 19, 2016, he was not in physical or legal custody of his children. *See* Bers Decl. Ex. L (denying

Grimes custody and visitation rights on April 14, 2016, and citing an active restraining order against him to protect the children). He was denied reunification services and denied visitation rights by the juvenile court. *Id.* Grimes does not dispute that this juvenile court order was issued before the removal of his children on April 19, 2016. Presently, he also lacks any parental rights. *See* Bers Decl. Ex. DD. Accordingly, he lacks standing to assert any claims on behalf of his children. *Cartano*, 2002 WL 1677723 at *2 ("it appears from the allegations in the complaint that plaintiff does not have physical or legal custody of the children (and may not even have visitation rights), and would therefore not be an appropriate guardian ad litem.").

Nor does Grimes have standing to bring the Fourth Amendment claims. They are based on his supposed expectation of privacy in the home from which his children were removed. But the home was Martinez's and Grimes was not on the lease. *See* Bers Dec. Ex. B at 142:7-9. There was also a stay away order against Grimes at the time of the children's removal, to protect them and Martinez from him. Therefore, Grimes has failed to demonstrate any injury to any reasonable expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."); *see also United States v. SDI Future Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009) ("[T]o say that a party lacks [F]ourth [A]mendment standing is to say that his reasonable expectation of privacy has not been infringed.").

Grimes does have standing, however, to assert violations of the remaining Fourteenth Amendment claims that occurred when he still had or was litigating the scope of his parental rights. Parents have a "constitutionally protected liberty interest in making decisions about the care, custody, and control of their children." *Miller v. California*, 355 F.3d 1172, 1175 (9th Cir.2004). This liberty interest guarantees "the right of parents and children to live together without government interference," meaning "parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino County Dep't of Soc. Services*, 237 F.3d 1101, 1107 (9th Cir.2001). A court can reduce a parent's liberty interest through actions like removing custody or visitation, but a parent's liberty interest "may not be eliminated altogether." *Wilson v. Fla. Dep't of Revenue*, No. 14-CV-04726-JCS, 2015 WL

7

136557, at *8 (N.D. Cal. Jan. 8, 2015).

Although Grimes lacked any custody or visitation rights when his children were removed on April 19, 2016, the defendants include evidence that Grimes's parental rights were not permanently removed until February 27, 2018. Bers Decl. Ex. DD. Given the circumstances, Grimes's injury in fact is based on the liberty interest he had at the time his children were removed from their home. Defendants rely on *Burke v. City of Alameda*, 586 F.3d 725, 733 (9th Cir. 2009), and *Brittain v. Hansen*, 451 F.3d 982, 989 (9th Cir. 2006) to argue that he had lost his liberty interest by April 19, 2016, but those cases are unpersuasive. *Burke* did not conduct a standing analysis, and it did not hold that parents with an inherent liberty interest lose that interest when they lose physical and legal custody. 586 F.3d 725, 733 (9th Cir. 2009). Likewise, *Brittain* simply recognized that non-custodial parents have a reduced liberty interest in their children and that visitation rights are not the same as custodial rights and require a different analysis. 451 F.3d 982, 989 (9th Cir. 2006).

## II.  COLLATERAL ESTOPPEL

As a second threshold issue, defendants argue that the doctrine of collateral estoppel, also known as issue preclusion, requires that prior orders related to Grimes's dependency proceedings apply to all the claims of this action, resolving them in defendants' favor. Grimes did not address the collateral estoppel argument in his timely opposition, but for one sentence that he "is not [seeking] to retry the state juvenile proceedings." Opp. at 6 (Dkt. No. 53). He filed a sur-reply, adding that he was not convicted of domestic violence by the juvenile court and that he believes that the court violated his constitutional rights as well. Opp. at 3 (Dkt. No. 56).

The doctrine of collateral estoppel prevents retrying issues actually litigated and necessarily decided after a full and fair opportunity to be heard in a prior proceeding. *Kourtis v. Cameron*, 419 F. 3d 989, 994 (9th Cir. 2005). A prior decision has preclusive effect where: (i) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (ii) the first proceeding ended with a final judgment on the merits; and (iii) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

8

The rationale for collateral estoppel is the "principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Federal Say and Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1952). If I allowed claims on the same issues to continue after they were already litigated, it would waste judicial resources and overly burden parties who have already argued and prevailed to a final judgment. *Id*. at 107-08.

### A. Grimes Appeared in the Prior Proceedings

There is no dispute that Grimes is the same party in the juvenile court proceedings and other litigation arising from the removal of his children. Therefore, this element of collateral estoppel is met because the party against whom issue preclusion is asserted "was a party or in privity with a party at the first proceeding." *Paulo v. Holder,* 669 F.3d 911, 917 (9th Cir. 2011) (quoting *Hydranautics*, 204 F.3d at 885).

### B. The Issues Raised Were Actually Litigated

Next, the issues raised in this action must be the same issues actually litigated by Grimes in the past proceedings. For collateral estoppel to apply, defendants must show that the estopped issue is identical to an issue already litigated and that the issue was decided in the first case. *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 912 (9th Cir. 1997). Defendants assert collateral estoppel for all claims here, including claims surrounding the legality of the April 19, 2016 removal of Grimes' children, and allegations that Ayerdis and Mendoza fabricated evidence against him. Mot. Summ. J. at 16-17.

It is evident that Grimes already challenged the removal of his three children from parental custody and the allegedly fabricated evidence by defendants Ayerdis and Mendoza. The factual allegations on record forming the basis of Grimes' claims, which he continued to dispute at the hearing, are also identical to those made in the juvenile dependency proceedings. On September 15, 2017, the Court of Appeal found that the record provided a compelling basis for the juvenile court's finding that Grimes's ongoing domestic violence placed the children at risk. RJN Ex. 3 at 10. The issue of whether defendants were justified to remove his three children from custody was raised and litigated. The Court of Appeal affirmed the juvenile court, resolving litigation claims

of improper venue and evidentiary challenges posed by Grimes. *Id*. at 2. Preceding this decision, the juvenile court found that Ayerdis offered "extremely credible" testimony. *Id*. at 5. On January 24, 2018, Grimes appealed the San Mateo juvenile court's order to determine his parental rights. RJN Ex. 4. The Court of Appeal discussed the sexual abuse allegations against Grimes and noted that Grimes filed a declaration denying sexual abuse and accusing the San Mateo County Human Services Agency of fabricating evidence in the report Mendoza drafted. *Id*. at 4, 6.

There is also evidence that these issues were argued in federal court on prior occasions. On April 20, 2017, Grimes filed a lawsuit alleging various constitutional violations related to Mendoza's alleged fabrication of evidence of sexual abuse. RJN Ex. 7 at 1. His complaint was dismissed with prejudice by the Hon. Edward M. Chen in this District. *Id*. at 4. On April 11, 2018, Grimes filed another lawsuit in federal court on the same facts here, alleging that social workers fabricated evidence of domestic violence and sexual assault that violated his constitutional rights for removing his children. RJN Ex. 8. The Hon. Maria-Elena James in this District reassigned the case after magistrate judge jurisdiction was denied, with the recommendation that the complaint be dismissed. *Grimes v. Dias*, No. 18-CV-02173-MEJ, 2018 WL 1833896, at *4 (N.D. Cal. Apr. 18, 2018). The Hon. Yvonne Gonzalez Rogers adopted the recommendation and dismissed the complaint with prejudice after Grimes failed to prosecute his case following leave to amend. *See Grimes v. Dias*, No. 18-CV-02173-YGR (N.D. Cal. July 10, 2018) (Dkt. No. 10).

Grimes already litigated the issue of whether removing his children was appropriate, and whether the evidence presented in those proceedings was fabricated. There is no doubt that the issues raised in this lawsuit have been actually litigated elsewhere.

### C. Other Courts Exercised Final Judgment on the Merits

Finally, defendants argue that the legality of the children's removal on April 19, 2016, and Grimes' fabrication claims against Ayerdis and Mendoza, were decided against him already. It is evident from the September 15, 2017 Court of Appeal opinion affirming the juvenile court that the state court proceedings exercised a final judgment on the merits on issues including his children's removal and evidence provided by Ayerdis. RJN Ex. 3 at 9-10. The juvenile court made factual

findings on the weight of Ayerdis's evidence. *See Smith v. Banner Health Sys.*, 621 F. App'x 876, 880 (9th Cir. 2015) (affirming lower court grant of summary judgment on collateral estoppel grounds where the juvenile court made factual findings regarding custody and evidence that precluded Fourteenth Amendment claims). In another proceeding, Grimes petitioned the San Mateo juvenile court's order to determine his parental rights, which made findings of fact on the sexual abuse allegations pertaining to Mendoza's report. RJN Ex. 4. The Court of Appeal discussed those sexual abuse facts and denied his petition for relief. *Id*. Grimes has at least one pending appeal regarding the San Mateo juvenile court order terminating his parental rights. RJN Ex. 5.

The federal court decisions discussed above also reached final judgments. Judge Chen dismissed Grimes's complaint with prejudice on July 26, 2017, which included fabrication allegations related to Mendoza's report on sexual abuses against the children. RJN Ex. 7 at 3. The court declined to exercise jurisdiction on the constitutional claims based on the *Younger* abstention doctrine, *Younger v. Harris*, 401 U.S. 37 (1971), because "Grimes offers no reason why he is not able to raise his allegations about the fabrication of evidence (or his other federal constitutional rights) in the state proceedings." *Id*. Judge Gonzalez Rogers ultimately dismissed another of Grimes's complaints with prejudice after he failed to prosecute his case following leave to amend. *See Grimes v. Dias*, No. 18-CV-02173-YGR (N.D. Cal. July 10, 2018) (Dkt. No. 10). Similarly, in Grimes's related case against the City of Brisbane defendants, I dismissed his Fourth and Fourteenth Amendment claims with prejudice for failure to prosecute after a motion to dismiss was granted with leave to amend. *Grimes v. City of Brisbane*, No. 17-CV-01026-WHO, 2017 WL 2651992, at *1 (N.D. Cal. June 20, 2017).

Defendants have established that collateral estoppel bars Grimes from re-litigating the issues underlying his claims, and on that basis, I GRANT the motion for summary judgment. For the sake of completeness, I also find that the individual defendants are entitled to qualified immunity and that the City cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory. Discussion of those issues follows.

## III. QUALIFIED IMMUNITY

Grimes alleges that Mendoza fabricated evidence and made a false statement when she "contacted the Brisbane Police Department alleging that the Father...sexually abused his oldest Daughter." Compl. at 15. He contends that also Ayerdis fabricated evidence in order to, allegedly unconstitutionally, go to the home of Grimes's children and remove them from his custody. *Id*. But those claims cannot stand because both defendants are entitled to qualified immunity.

The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Generally, "[q]ualified immunity shields an official from damages in a civil suit unless the plaintiff can make the showing that the official's actions violated a constitutional right, and that the right was 'clearly established' at the time of the violative conduct." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Courts follow a two-pronged approach when analyzing qualified immunity: (i) whether "[t]aken in the light most favorable to the party asserting the injury...the facts alleged show the officer's conduct violated a constitutional right," and; if so, (ii) "whether it would be clear to a reasonable officer that h[er] conduct was unlawful in the situation [s]he confronted." *Springer v. Placer Cty.*, 338 F. App'x 587, 589 (9th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-2 (2001)).

Grimes alleges that Ayerdis came to his home without a warrant, questioned his children without a warrant, and removed the children unlawfully. Compl. at 11. His complaint is conclusory, and he does not provide evidence supporting a constitutional violation. But if he could prove a constitutional violation, Grimes cannot show that Ayerdis's conduct was clearly unlawful to a reasonable social worker in this context. The basis for Ayerdis's concern is obvious in light of the prior restraining orders and findings of harm to the children. Moreover, Ayerdis provided a declaration under oath attesting to having Martinez's permission to enter the home and question the children, as well as entering the second time after receiving a warrant. Ayerdis Decl. ¶¶ 13, 16. She saw Grimes around the home in his van as she was leaving the first time and knew

that there was an active restraining order against him. When she approached the home a second time, she heard loud yelling from a male voice in the home and observed the same van nearby. Ayerdis Decl. ¶ 15. Additionally, when police identified the van, it was registered to Grimes. *Id*.

The other fabrication charges launched against Ayerdis and Mendoza are equally futile. Mendoza and Ayerdis have a mandatory duty under California law to report when they reasonably suspect abuse or neglect to a child. Cal. Pen. C. § 11166(a). While there is a right for parents and children to live together without government interference, it is limited "by the government's need to investigate serious claims of abuse." *Haldeman v. Golden*, 359 F. App'x 777, 779 (9th Cir. 2009). It is clear that Mendoza had a "serious and important obligation to protect child welfare" once she had good cause to believe Grimes committed sexual abuse of his daughter based on what a reporting party told her. *Id.* Likewise, Ayerdis had an obligation to protect child welfare when she had good cause to believe Grimes was in the house even though he was subject to an active stay away order. Grimes did not provide evidence to dispute these facts. I conclude that both Mendoza and Ayerdis are entitled to qualified immunity for all claims Grimes asserts against them.

## IV. MUNICIPAL LIABILITY

The City is also entitled to prevail on summary judgment. A municipality "cannot be held liable under [section] 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, the Supreme Court has required a plaintiff seeking to impose liability on a municipality under [section] 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011) (internal quotation marks and citations omitted). For a municipality to be liable, the plaintiff must establish: "(1) that he or she possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005) (internal citations, quotations marks, and modifications omitted).

Grimes has failed to show the existence of a policy or custom giving rise to municipal

13

liability. There is no evidence demonstrating a policy of removing children from homes without exigent circumstances. Even if Grimes could prevail on his underlying claims (and he cannot), a single incident alone would not suffice to prove an existing policy or custom that can be attributable to the municipal policy maker. *See Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Davis v. Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989) ("[A] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a nonpolicy making employee."). Therefore, I GRANT the motion for summary judgment with respect to the City as well.

## CONCLUSION

For the reasons described above, defendants' motion for summary judgment is GRANTED. Judgment shall be entered in accordance with this Order.

**IT IS SO ORDERED.**

Dated: August 6, 2018

William H. Orrick
United States District Judge

14